## AMERICAN DISTRIBUTING CO. v. HAYES WHEEL CO.

### (District Court, E. D. Michigan, S. D.    March 23, 1918.)

### No. 5772.

1. COMMERCE ⬡⟳8(1)—INTERSTATE COMMERCE—BURDENS.

As Congress has exclusive power to regulate interstate commerce, state legislation, imposing substantial burdens on interstate commerce, is invalid.

2. CONSTITUTIONAL LAW ⬡⟳48—CONSTRUCTION OF STATUTES—CONSTITUTIONALITY.

A statute should be construed, whenever possible, in such a way as to make it constitutional, rather than unconstitutional.

3. COMMERCE ⬡⟳40(1)—INTERSTATE COMMERCE—WHAT CONSTITUTES.

A contract whereby a foreign corporation, not authorized to do business within the state of Michigan, agreed to become the sales agent for and to dispose of the products of a Michigan corporation in the several states, is one involving the subject-matter of interstate commerce, and without the scope of state legislation; hence Pub. Acts Mich. 1901, No. 206, as amended by Pub. Acts Mich. 1903, No. 34, and by Pub. Acts Mich. 1907, No. 310, declaring that no foreign corporation shall be capable of making a valid contract in the state until it shall have fully complied with the requirements of the act and holds an unrevoked certificate to that effect, but that the act shall not be construed to prohibit any sale of goods or merchandise which would be protected by the rights of interstate commerce, must be deemed inapplicable, for otherwise the act would be invalid.

4. COMMERCE ⬡⟳40(1)—INTERSTATE COMMERCE—TRANSACTIONS.

In such case, though the selling agency created by the contract was for the United States, and necessarily included the state of Michigan, that was merely incidental, and the contract did not by reason thereof lose its interstate character.

5. CONTRACTS ⬡⟳10(4)—CONSTRUCTION—MUTUALITY.

Where defendant accepted plaintiff's offer to undertake the sale of defendant's wheels for automobiles and power vehicles, the offer prescribing the terms of the arrangement under which orders were to be submitted to defendant, the contract is not bad for want of mutuality, for it must be assumed that the parties agreed impliedly, if not expressly, that plaintiff would exercise good faith and reasonable diligence in obtaining orders during the term of the contract.

At Law. Assumpsit by the American Distributing Company, a corporation, against the Hayes Wheel Company, a corporation. There was a verdict for plaintiff, and defendant moves for judgment non obstante veredicto. Motion denied.

Thomas E. Barkworth, of Jackson, Mich., for plaintiff.
Price & Whiting, of Jackson, Mich., for defendant.

TUTTLE, District Judge. This matter comes before the court on a motion by defendant for a judgment non obstante veredicto. The action is assumpsit for the recovery of damages claimed to have been sustained by the plaintiff by reason of the repudiation by defendant of a written contract between plaintiff and defendant, providing for the appointment of the former as the selling agent of the latter, and fixing the terms of such employment. Defendant is a Michigan cor-

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

poration, engaged in the manufacture of automobile wheels in the city of Jackson, Mich., where it has its factory. The plaintiff is an Ohio corporation, and by the contract in question undertook to become selling agent of the defendant for the sale of its wheels throughout the United States. The contract, by its terms, was to continue in force for five years from and after the date of such contract, July 1, 1910. On May 25, 1914, defendant repudiated this contract and terminated all business relations with the plaintiff thereunder. Plaintiff thereupon brought this action to recover commissions alleged to have been earned up to the date of such repudiation and damages alleged to have been sustained by reason of lost commissions which it would have earned during the unexpired balance of the term of the contract. The cause was submitted to a jury, which returned a verdict in favor of plaintiff, and defendant has filed this motion for a judgment non obstante veredicto.

Although several questions were argued on the trial, all of these except two have become immaterial, in view of the charge of the court and the verdict of the jury. The only two questions argued on this motion and necessary to be considered here are the following: First, was this contract void because plaintiff, a foreign corporation, was not authorized to do business in Michigan? and, second, was such contract void for lack of mutuality? The contract involved was in the form of a letter, written by the plaintiff to the defendant, and accepted in writing by the latter, and is as follows:

"July 1, 1910.

The Hayes Wheel Company, Jackson, Mich.—Gentlemen: We make the following proposal for conducting the sale of your wheels:

"We will undertake the sale of your wheels for automobiles, and power vehicles of all kinds, for the entire United States, upon the following terms and conditions:

"*Commissions.*—On all orders received, accepted, and shipped by your company you will pay us 3% of the net sales price charged on orders.

"All inquiries received by you are to be referred to us. Above commission shall be paid to us, our successors or assigns, by your company, its successors or assigns. On all orders for said goods, accepted and shipped by you during the life of this contract, said commission is to be paid between the 10th and 15th day of each month, for all goods paid for during the preceding month. It is understood that commissions are to be paid on collections, no commissions to be paid unless collections are made.

"*Credits.*—You are to accept all risks and make all collections on orders accepted by you, it being understood that all orders taken by us shall be submitted for your acceptance. ,

"*Terms of Sale.*—Selling price on all wheels is to be quoted and governed by you, and we are to be immediately notified of all changes in price and market conditions.

"*Advertising.*—You are to stand the expense of all advertising, should we mutually decide that such advertising is necessary. All advertising matter and letters sent out by you shall include the following: 'The American Distributing Company, Sales Agents, Jackson, Mich.'

"*Expenses.*—Your company shall not be liable for any of our expenses whatsoever, except such as may be mutually agreed upon. Each party shall advertise as it sees fit, and neither party shall be liable for any advertising expenses incurred by the other..

"*Samples.*—You will furnish samples for test and inspection whenever this is found necessary.

"*Life of Contract.*—It is understood that this contract is made to cover a period of five years from the date of its acceptance by you.

"This proposal, when signed by your company, is to have the full force and effect of a duly executed contract.

"Respectfully submitted,          The American Distributing Company,

"By Chas. G. McCutchen, Pres.

"Accepted by Hayes Wheel Co., by C. B. Hayes, Pres."

[1-3] 1. Section 1 of act 206 of the Michigan Public Acts of 1901, as amended by act 34 of the Public Acts of 1903, being section 9063 of the Michigan Compiled Laws of 1915, provides that:

"It shall be unlawful for any corporation organized under the laws of any state of the United States, except the state of Michigan, or of any foreign country, to carry on its business in this state, until it shall have procured from the secretary of state of this state a certificate of authority for that purpose. To procure such certificate of authority every such foreign corporation or association shall comply with" certain requirements therein prescribed.

Section 6 of this act, as amended by act 310 of the Public Acts of 1907, being section 9068 of the Compiled Laws of 1915, is as follows:

"No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the secretary of state."

Section 8 of the same act, as amended by act 310 of the Public Acts of 1907, being section 9070 of the Compiled Laws of 1915, provides that this act shall not—

"be construed to prohibit any sale of goods or merchandise which would be protected by the rights of interstate commerce."

It is conceded that the plaintiff was not thus authorized to carry on business in Michigan at the time of the making of the contract in question. It is also conceded that upon the making of such contract the plaintiff established an office in the state of Michigan from which it carried on its business of securing orders from the entire country for the sale of the wheels manufactured by the defendant. Defendant urgently insists that the plaintiff was at the time of the making of this contract a foreign corporation doing business within the state of Michigan, and that, therefore, it was subject to the provisions of the act just cited, and incapable of making the contract in question, which was therefore void. It is urged by plaintiff that the making of this contract constituted a part of interstate commerce, that such contract was therefore not prohibited by such act, and that, if such act does apply to such contract, the former is an attempt by a state Legislature to regulate and obstruct interstate commerce and is therefore to that extent contrary to the United States Constitution and void. Counsel for both sides have submitted able briefs, which have been carefully examined.

It is, of course, well settled that only Congress can regulate interstate commerce, and that no state can under any guise enact legislation the effect of which is to obstruct or substantially burden such commerce. McCall v. People of the State of California, 136 U. S.

104, 10 Sup. Ct. 881, 34 L. Ed. 391; Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649; International Text-book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103; Heyman v. Hays, 236 U. S. 178, 35 Sup. Ct. 403, 59 L. Ed. 527; Rosenberger v. Pacific Express Co., 241 U. S. 48, 36 Sup. Ct. 510, 60 L. Ed. 880; Pennsylvania R. Co. v. Sonman S. C. Co., 242 U. S. 120, 37 Sup. Ct. 46, 61 L. Ed. 188; Butler Bros. Shoe Co. v. United States Rubber Co., 156 Fed. 1, 84 C. C. A. 167; United States v. Tucker (D. C.) 188 Fed. 741; Star-Chronicle Pub. Co. v. United Press Ass'ns, 204 Fed. 217, 122 C. C. A. 489; Coit & Co. v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819; People v. Bunker, 128 Mich. 160, 87 N. W. 90; City of Muskegon v. Hanes, 149 Mich. 460, 112 N. W. 1077; Fifth Avenue Library Society v. Hastie, 155 Mich. 56, 118 N. W. 727. If the contract in question comes within the prohibition of the statute of Michigan thus invoked, there can, of course, be no doubt that such prohibition not only obstructs and burdens the making of such contract, but actually destroys it. It becomes, therefore, necessary to determine whether the making of such contract was an act of interstate commerce. If so, it was beyond the power of the state to so prohibit it, and the statute in question can have no application to such contract. It is clear that this contract contemplated sales of goods by the defendant in Michigan to purchasers in other states, on orders to be sent from such states into Michigan, and accepted in the latter state, such goods then to be shipped from Michigan to such other states. Any such sale constituted undoubtedly interstate commerce, and could not be affected by legislation of the state of Michigan. Robbins v. Taxing District, 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; Butler Bros. Shoe Co. v. United States Rubber Co., supra; United States v. Tucker, supra; Fifth Ave. Library Society v. Hastie, supra. Indeed, as has been already stated, such a sale is expressly excepted from the operation of the statute.

It is, however, urged that this contract was not in itself a sale in interstate commerce, and did not directly involve commercial intercourse between the state of Michigan and another state, but was merely a business contract made within the state of Michigan, and therefore subject to the requirements of such state governing the validity of contracts. I cannot agree with this contention. It seems to me that counsel overlooks the fact that the very object of such contract was to provide for taking orders which would form part of transactions constituting interstate commerce, to which the making of this contract was merely incidental. Being, therefore, so closely related to, and connected with, interstate commerce, the contract was, in my opinion, itself interstate commerce. In the language of the statute previously quoted, it was "protected by the rights of interstate commerce." Butler Bros. Shoe Co. v. United States Rubber Co., supra; United States v. Tucker, supra; McCall v. People of the State of California, supra; International Text-Book Co. v. Pigg, supra; Heyman v. Hays,

supra; Rosenberger v. Pacific Express Co., supra. As was pointed out by the Supreme Court in Heyman v. Hays, supra:

"In the nature of things the protection against the imposition of direct burdens upon the right to do interstate commerce, as often pointed out by this court, is not a mere abstraction, affording no real protection, but is practical and substantial, and embraces those acts which are necessary to the complete enjoyment of the right protected. * * * It is not open to controversy that substance, and not form, controls in determining whether a particular transaction is one of interstate commerce."

In the language of McCall v. California, supra:

"The object and effect of his soliciting agency were to swell the volume of business. * * * It was one of the 'means' by which the company sought to increase, and undoubtedly did increase, its interstate * * * traffic."

The rule was thus stated in United States v. Tucker, supra:

"Neither a sale nor the place of sale and delivery is alone the test of interstate commerce, nor does transportation, although an adjunct essential to commerce, constitute a transaction interstate commerce. A sale, the parties to which are from different states, when such sale necessarily involves the transportation of goods, is a transaction of interstate commerce, whether the contract of sale be made in the one state or the other, or made before or after shipment. Every negotiation, initiatory and intervening act, contract, trade, and dealing between citizens of any state, or territory, or the District of Columbia, with those of another political division of the United States, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

The same question in effect was involved in the recent case of Rosenberger v. Pacific Express Co., supra. In that case the Supreme Court had under consideration a statute of the state of Texas imposing a state license tax of $5,000 annually on each place of business or agency of every express company where intoxicating liquors were delivered and the price collected on C. O. D. shipments. This statute was attacked as unconstitutional, on the ground that it unlawfully burdened interstate commerce in so far as it applied to C. O. D. agreements relating to shipments from outside of Texas to that state. The Supreme Court of Missouri held the statute constitutional. The United States Supreme Court, speaking by Mr. Chief Justice White, reversed the judgment, saying, among other things:

"The interstate commerce which is subject to the control of Congress embraces the widest freedom, including, as a matter of course, the right to make all contracts having a proper relation to the subject."

Applying these rules to the present case, I am of the opinion that the contract in question had such a relation to the subject of interstate commerce that in itself it constituted such commerce, and that, consequently, it was not subject to the provisions of the Michigan statute referred to. If such statute were intended to apply to the making of such a contract, it would be to that extent unconstitutional and void. Inasmuch, however, as a statute should be construed, whenever possible, in such a way as to make it constitutional, rather than unconstitutional, I think that this statute should be held not to be applicable to this contract, which seems to be within at least the spirit of the clause, already quoted, excepting from the operation of such statute any sale

250 F.—8

of goods or merchandise which would be protected by the rights of interstate commerce. United States v. Delaware & Hudson Co., 213 U. S. 366, 29 Sup. Ct. 527, 53 L. Ed. 836. As was said by the United States Supreme Court, speaking by Mr. Chief Justice White, in the case last cited:

"It is elementary when the constitutionality of a statute is assailed, if the statute be reasonably susceptible of two interpretations, by one of which it would be unconstitutional and by the other valid, it is our plain duty to adopt that construction which will save the statute from constitutional infirmity."

So construed, this statute must be held not to apply to the making of the contract in question.

[4] Nor is the conclusion which I have thus reached affected by the fact that this contract, creating as it does a selling agency for the entire United States, necessarily includes the state of Michigan, and therefore applies to orders taken in accordance with its terms in such state. This is merely incidental to the main object of the contract, which was, as I have pointed out, the carrying on of operations in interstate commerce. The fact, therefore, that some intrastate business might be included in the business done under the contract, would not change the essential character of such contract, nor render it the less a transaction in interstate commerce. Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649. This contention must, therefore, be overruled.

[5] 2. It is urged that the contract does not expressly impose any obligation upon the plaintiff, but only upon the defendant, and that therefore it is void for lack of mutuality. I have carefully considered this contention, but am unable to agree with it. It will be noted that the contract took the form of a letter from the plaintiff to the defendant, in which the former made a "proposal for conducting the sale of" defendant's wheels. The plaintiff begins by declaring:

"We will undertake the sale of your wheels * * * for the entire United States upon the following terms and conditions."

The letter then provides for the payment of the commission mentioned "on all orders received, accepted, and shipped by" defendant. This clearly contemplated that plaintiff would at least "undertake" to secure and submit to defendant certain orders. Plaintiff also says:

"It being understood that all orders taken by us shall be submitted for your acceptance."

This certainly implies an undertaking by plaintiff to take orders and submit them to defendant. That plaintiff regarded this letter as an offer, to become an agreement upon its acceptance by defendant, is shown by the concluding language, which is as follows:

"It is understood that this contract is made to cover a period of five years from the date of its acceptance by you. This proposal, when signed by your company, is to have the full force and effect of a duly executed contract."

Plaintiff thus plainly expressed its desire to make a "contract" which should "cover a period of five years"; it being clearly the intention of

the plaintiff that when its "proposal" was signed by defendant, it should have the "full force and effect of a duly executed contract." It would seem, therefore, that when the defendant expressly indicated its acceptance of this offer, by writing upon the face of such proposal the words, "Accepted by Hayes Wheel Company, by C. B. Hayes, President," the parties understood that they had entered into a binding contract. Each must, therefore, have understood that both it and the other party were bound, by the terms of such contract, to do certain things. As was said in Ellis v. Dodge Brothers, 246 Fed. 764, —— C. C. A. ——, in which a contention somewhat similar to that of defendant here was considered and overruled:

"In disposing of this case we will proceed upon the assumption that when business men negotiate with each other, and reduce the result of their negotiations to writing, and speak of that which they execute as an agreement between themselves, that the purpose was to accomplish something. The instrument, if it is capable of such construction, will be so construed as to make all of its parts consistent and effective."

The object of this contract was undoubtedly the establishment of business relations between the plaintiff and defendant, under which the former would in good faith endeavor to secure all of the orders reasonably possible for the wheels manufactured by the defendant and submit such orders to the latter for acceptance, for which services the defendant would pay the plaintiff the commission agreed upon, and this arrangement was to continue for the period mentioned.

I am of the opinion that by the terms of this contract the parties must be held to have agreed impliedly, if not expressly, that plaintiff would exercise good faith and reasonable diligence in obtaining orders for submission to and acceptance by defendant during the term of the contract, and the contract, therefore, is not open to the objection that it lacks mutuality. Mueller v. Mineral Spring Co., 88 Mich. 390, 50 N. W. 319; Emerson v. Pacific Coast & Norway Packing Co., 96 Minn. 1, 104 N. W. 573, 1 L. R. A. (N. S.) 445, 113 Am. St. Rep. 603, 6 Ann. Cas. 973; Baltimore Breweries Co. v. Callahan, 82 Md. 106, 33 Atl. 460; W. G. Taylor v. Bannerman, 120 Wis. 189, 97 N. W. 918. Indeed, one of the defenses urged by defendant at the trial was based on its contention that the plaintiff had neglected its interests and by failure to use proper diligence and skill had deprived defendant of orders which should have been secured, and that for this reason defendant was justified in repudiating the contract. This question was submitted, under proper instructions, to the jury, which found in favor of the plaintiff. I am satisfied that this contention is without merit, and it is therefore overruled.

For the reasons stated, it follows that the motion must be denied.